385 So.2d 767 (1979)
Sandra Mutina RUDLOFF
v.
LOUISIANA HEALTH SERVICES AND INDEMNITY CO. d/b/a Blue Cross of Louisiana.
No. 65037.
Supreme Court of Louisiana.
December 13, 1979.
On Rehearing June 23, 1980.
Howard E. Sinor, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant-respondent.
Leon Rudloff, New Orleans, for plaintiff-applicant.
STONE, Judge ad hoc.
The plaintiff, Sandra Mutina Rudloff, brought suit against Louisiana Health Services and Indemnity Co. ("Blue Cross") in the First City Court of New Orleans. She sought reimbursement for certain hospital and doctors' charges under a group health and accident policy issued by defendant to the City of New Orleans. Plaintiff also sought penalties and attorney's fees under La.R.S. 22:657. The court entered judgment in favor of the plaintiff for $1,254.41 for the hospital and doctors' charges. The Fourth Circuit Court of Appeal reversed and found for the defendant. We affirm the Fourth Circuit's ruling.
Sandra Mutina Rudloff was hospitalized at Tulane Medical Center from May 30, 1977 until June 17 of that year for a mental disorder. At the time of the hospitalization, *768 Rudloff was insured as a dependent under a contract of hospitalization insurance between Blue Cross and the City of New Orleans (plaintiff's spouse's employer). Blue Cross refused Rudloff's claim for reimbursement of the hospital and doctors' charges under an article of the contract which provided:
No benefits shall be paid hereunder on account of:
Professional services, supplies or hospitalization for mental or nervous disorders and psychiatric disorders (such as minimal brain dysfunction) of the central nervous system....
After Blue Cross denied the claim, Rudloff filed suit for the charges contending that Blue Cross failed to comply with La. R.S. 22:213.2, and because of that failure the court should construe the contract as including the disputed coverage. La.R.S. 22:213.2 provides in pertinent part:
A. Every insurer authorized to issue policies of health and accident insurance in this state shall offer to all prospective group, blanket, and franchise policyholders at their option a provision in the insurer's health and accident insurance policies which shall state that benefits shall be payable for services rendered for the treatment of mental and/or nervous disorders, under the same circumstances, conditions, limitations, and exclusions as benefits are paid under those policies for all other diagnoses, illnesses, or accidents;...
Assuming for the moment that R.S. 22:213.2 applies to the policy in question, and further assuming that Blue Cross failed to make the proper offer as required by that statute, we note that no penalty is prescribed by the insurance code for such a failure. To permit recovery in this case, assuming a valid offer, would require us to impute acceptance by the city. We are forced to conclude that the plaintiff may not recover in this case under her hospitalization insurance contract.
The plaintiff draws the court's attention to R.S. 22:653 which states:
Any insurance policy, rider, or endorsement, hereafter issued and otherwise valid, which contains any condition or provision not in compliance with the requirements of this Code, shall not be rendered invalid thereby, but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider or endorsement been in full compliance with this Code.
It must be noted that nothing in the policy under consideration fails to comply with the insurance code. A contract of hospitalization insurance is in perfect conformity with the code where there is no coverage for mental or nervous disorder treatment. If R.S. 22:213.2 is applicable to a hospitalization insurance contract, it merely requires that mental coverage be offered, not that it be included in all such contracts. The contract conforms to the code without the disputed coverage and therefore R.S. 22:653 does not allow us to construe the contract as including coverage for the treatment of mental disorders.
The plaintiff argues that R.S. 22:213B(8) requires the court to construe the contract as including the disputed coverage. The statute seeks only to assure that if a policy uses certain terms or has reference to certain matters the terms used and the matters referred to should be uniformly understood. In short, R.S. 22:213B seeks to provide for uniform definitions for terms commonly used in insurance contracts. R.S. 22:213B(8) defines "conformity with state statutes" in a certain way and calls upon the courts to construe clauses pertaining to such conformity in the way set forth. There is no such construction problem at issue here. The plaintiff's argument fails to persuade us.
The court has not been able to find any other provision of the insurance code which convinces it that the specifically excluded coverage should be read into the contract.
The court notes that Tabb v. La. Health Services & Indemnity Co., 361 So.2d 862 (La.1978) held that a policy of hospitalization insurance was not "health and accident *769 insurance" as contemplated by the insurance code. This court does not overrule Tabb today but simply finds that, even if R.S. 22:213.2 is applicable to the insurance contract at issue contrary to Tabb, the plaintiff fails here.
AFFIRMED.
MARCUS, J., dissents and assigns reasons.
CALOGERO and DENNIS, JJ., dissent for the reasons assigned by MARCUS, J.
MARCUS, Justice (dissenting).
I believe we erred in Tabb v. Louisiana Health Services and Indemnity Co., 361 So.2d 862 (La.1978) in finding that a policy like the one sued upon in the instant case is not a "health and accident insurance" policy as defined by La.R.S. 22:6(2). That statute defines "health and accident insurance" as "[i]nsurance against bodily injury ... and against disablement resulting from sickness and every insurance appertaining thereto" (emphasis added); such broad language would include a policy designed to provide benefits for hospital and medical care resulting from bodily injury or disablement. Therefore, defendant insurer should have offered mental disorder coverage to the City of New Orleans in compliance with La.R.S. 22:213.2. The courts below found that no such offer was made.
I also disagree with the majority's statement that La.R.S. 22:653 does not direct construction of the City's contract as including the non-offered mental disorder coverage; policies failing to comply with La.R.S. 22:213.2 "shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy... been in full compliance with [the] Code." I would allow plaintiff to recover the expenses incurred for treatment of her mental disorder. Accordingly, I respectfully dissent.

ON REHEARING
WATSON, Justice.[*]
Plaintiff, Sandra Mutina Rudloff, filed suit against Louisiana Health Services and Indemnity Company (Blue Cross) for reimbursement of hospital and doctor's charges she incurred between May 30 and June 17, 1977, while confined to Tulane Medical Center for a mental or nervous disorder. At the time of her hospitalization, plaintiff was insured as a dependent under a contract of insurance between Blue Cross and the City of New Orleans (her husband's employer), and she sought recovery under the policy as well as penalties and attorney's fees under LSA-R.S. 22:657(A).[1]
The trial court ruled in favor of plaintiff in the amount of $1,254.41 for the hospital and doctors' charges but the Court of Appeal reversed. 372 So.2d 734 (La.App. 4 Cir. 1980). A writ of certiorari was granted. On original hearing before this court, the judgment was affirmed but, because of convincing arguments that Tabb v. Louisiana Health Services & Indemnity Co., 361 So.2d 862 (La., 1978) should be overruled, a rehearing was granted.
At issue is whether defendant, Blue Cross, was required by LSA-R.S. 22:213.2 to offer optional insurance coverage for the *770 treatment of mental and/or nervous disorders to policyholders under their group agreement with the City of New Orleans, whether such an offer was actually made, and, if not, whether the penalty for violation of the statute should be construction of the contract as including the non-offered mental disorder coverage.
It is undisputed that the group agreement in question specifically excludes coverage for plaintiff's illness. Article VI(14) (Major Medical) provides in pertinent part:
"No benefits shall be provided hereunder on account of:
* * * * * *
"Professional services, supplies or hospitalization for mental or nervous disorders and psychiatric disorders (such as minimal brain dysfunction) of the central nervous system ..."
Nevertheless, plaintiff contends that LSA-R.S. 22:213.2 mandates that Blue Cross, as a health and accident insurer, offer to group policyholders, at their option, coverage for mental and/or nervous disorders on the same terms as coverage for all other diagnoses, illnesses, or accidents. The applicable portion of LSA-R.S. 22:213.2A provides:
"Every insurer authorized to issue policies of health and accident insurance in this state shall offer to all prospective group, blanket, and franchise policyholders at their option a provision in the insurer's health and accident insurance policies which shall state that benefits shall be payable for services rendered for the treatment of mental and/or nervous disorders, under the same circumstances, conditions, limitations, and exclusions as benefits are paid under those policies for all other diagnoses, illnesses, or accidents; * * *".
The Court of Appeal accepted the trial judge's finding that defendant failed to offer mental-disorder coverage on the same terms as coverage for all other illnesses, yet denied plaintiff's claim on the grounds that, according to Tabb, the policy in question was not a health and accident insurance policy and therefore LSA-R.S. 22:213.2 was inapplicable.
LSA-R.S. 22:6(2) defines health and accident insurance as follows:
"(2) Health and Accident. Insurance against bodily injury, disablement or death by accident and against disablement resulting from sickness and every insurance appertaining thereto."
In Tabb, a policy which provided benefits for hospital and medical care, was held not to be a health and accident policy because it did not insure against injury, disablement or death. However, under the statute "health and accident insurance" also encompasses "insurance against bodily injury... and against disablement resulting from sickness and every insurance appertaining thereto." The United States Supreme Court has held that health insurance is "an undertaking by one person for reasons satisfactory to him to indemnify another for losses caused by illness." Haynes v. United States, 353 U.S. 81, 83, 77 S.Ct. 649, 650, 1 L.Ed.2d 671, 673 (1957). This policy which provides benefits for hospital and medical care, was intended to indemnify plaintiff for those expenses occasioned by her "sickness" and is therefore a health insurance policy. See Meyer, Life and Health Insurance Law, 19:3, p. 614 (1972). Since hospitalization policies are included within the definition of health and accident policies in Louisiana law, Blue Cross was required by LSA-R.S. 22:213.2 to offer coverage for mental disorders to its policyholders. To the extent that it conflicts with this holding, Tabb v. La. Health Services & Indem. Co., 361 So.2d 862 (La., 1978) is overruled.
Blue Cross did not offer coverage for treatment of mental and nervous disorders with the same conditions as the benefits for other illnesses. The trial and appellate courts correctly concluded that Blue Cross did not comply with the statute in this respect. The next question is whether the insurance contract should be read as though the requisite offer had been made and accepted.
Plaintiff contends that the policy should be reformed to provide the non-offered *771 mental disorder coverage as provided by LSA-R.S. 22:653.[2] However, LSA-R.S. 22:213.2 does not require the inclusion of benefits for mental and nervous disorders in health and accident insurance policies, rather it requires the offer of certain coverage which may be accepted at the policyholder's option. The question is what remedy is available to a policyholder who has not been offered mental disability coverage by the insurer.
Although not identical, the provisions of LSA-R.S. 22:213.2 are analogous to those of LSA-R.S. 22:1406D(1)(a), which requires the inclusion of uninsured motor vehicle coverage in every policy delivered or written in Louisiana unless the insured specifically rejects such coverage. In other words, the insured must be offered the option of obtaining uninsured motorist coverage, just as group health and accident policyholders must be offered the option of purchasing coverage for mental disorders. In Gianakis v. Mayen, 301 So.2d 413 (La.App. 4 Cir. 1974) there was no evidence uninsured motorist coverage had been rejected, and the policy was construed as though such coverage were included. In Walker v. Coleman, 367 So.2d 395 (La.App. 2 Cir. 1979) writ refused 369 So.2d 1365, it was held that the rejection of uninsured motorist coverage had to be in writing, even though the statute in effect at that time did not so provide. The court recognized the strong public policy behind the enactment of the uninsured motorist statute.
Likewise, the intent of the Legislature in enacting LSA-R.S. 22:213.2 was to promote the availability of mental disorder coverage in group health and accident insurance policies. To give effect to that intent, the Blue Cross policy should be read as though the statutorily mandated offer had been tendered and accepted.
Since Blue Cross clearly violated the provisions of LSA-R.S. 22:213.2 and no remedy is provided by the Insurance Code, reformation of the policy is appropriate. No other sanction is available.
On the issue of penalties and attorney's fees under LSA-R.S. 22:657(A), defendant claims that because it based its refusal to pay on a specific policy exclusion, a bona fide dispute existed with respect to coverage and penalties and attorney's fees should not be awarded. Valladares v. Monarch Insurance Co., 282 So.2d 569 (La.App. 4 Cir. 1973); Cotlar v. Gulf Insurance Co., 318 So.2d 923 (La.App. 4 Cir. 1975); Paret v. Louisiana Health Service and Indemnity Co., 366 So.2d 634 (La.App. 3 Cir. 1978), writ refused 369 So.2d 139.
Plaintiff, on the other hand, argues that defendant's failure to pay was not based on "just and reasonable grounds such as would put a reasonable and prudent businessman on his guard" but was based solely on its view that its policy exclusion prevailed over provisions of the Insurance Code.
Plaintiff first submitted her hospital and doctor bills to defendant on September 2, 1977. At the time of the initial submission of her claim, LSA-R.S. 22:213.2 had not been judicially interpreted and, as evidenced by the conflict between Tabb and this decision, there was room for disagreement on the question of its applicability to this type of policy. Therefore, defendant was justified in relying on its policy exclusion and is not liable for penalties and attorney's fees. See Hayden v. Torrence, 355 So.2d 1362 (La.App. 1 Cir. 1978), writ refused 357 So.2d 1166, 1169.
For the reasons assigned, the judgment of the Court of Appeal is reversed and the judgment of the trial court is reinstated.
REVERSED AND RENDERED.
BLANCHE and DIXON, JJ., dissent.
NOTES
[*] Lemmon, Justice, recused.
[1] LSA-R.S. 22:657(A) provides:

"All claims arising under the terms of health and accident contracts issued in this state, except as provided in Subsection B, shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payable to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. The district court of the parish where the insured lives or has his domicile shall have jurisdiction to try such cases."
[2] LSA-R.S. 22:653 provides:

"Any insurance policy, rider, or endorsement hereafter issued and otherwise valid, which contains any condition or provision not in compliance with the requirements of this Code, shall not be rendered invalid thereby, but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider or endorsement been in full compliance with this Code."