442 So.2d 778 (1983)
COLISEUM HOUSE, INC. d/b/a Coliseum House Hospital
v.
Henry J. BROCK.
No. 83-CA-511.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1983.
Rehearing Denied January 17, 1984.
*779 Wilbur Woods Reynaud, Lutcher, for defendant/third-party plaintiff-appellee, Henry J. Brock.
Eugene R. Preaus, Virginia N. Roddy, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, for defendant/third-party defendant-appellant, Protective Life Ins. Co.
Before CHEHARDY, CURRAULT and DUFRESNE, JJ.
CURRAULT, Judge.
This appeal arises from a judgment against third-party defendant, Protective Life Insurance Company (Protective) for benefits under a hospitalization policy insuring third-party plaintiff Henry J. Brock.
A review of the facts leading to the action between the parties reveals that on January 1, 1971, Protective Life Insurance Company issued group policy No. GD-3164-023 to the St. James Parish School Board under which qualified employees and their covered family members could become insured subject to the terms and conditions of that policy. Henry J. Brock, an employee of the school board, became insured under the policy; and, under the terms of said policy, Blane Brock, his son was eligible for certain medical benefits.
The Insuring Clause in the supplement to Group Policy No. GD-3164-023 which provides for major medical expense benefits limits benefits for the treatment of mental or nervous disorders to a maximum of Two Thousand Five Hundred Dollars ($2,500) during any one calendar year.
During the calendar year 1978, claims on behalf of Henry J. Brock were submitted to Protective Life Insurance Company (Protective) for expenses incurred in the treatment of his son who had been hospitalized at Ochsner Foundation Hospital (Ochsner) and Coliseum House (Coliseum) for treatment of a mental and/or nervous condition. In 1978, Protective paid basic benefits in the amount of Three Thousand Eight Hundred Twenty-Two Dollars and Eighty Cents ($3,822.80) to Ochsner and Three Thousand Twenty-Seven Dollars and Twenty Cents ($3,027.20) to Coliseum for a total of Six Thousand Eight Hundred Fifty Dollars ($6,850). Additionally, it paid major medical benefits of One Thousand Four Hundred Forty-Two Dollars and Eighty-One Cents ($1,442.81) to Ochsner and One Thousand Fifty-Seven Dollars and Nineteen Cents ($1,057.19) to Coliseum, totaling Twenty-Five Hundred Dollars ($2,500) for the treatment of Blane Brock.
In May and June, 1978, in response to billing by Coliseum, Henry J. Brock was advised by Protective that it had paid the maximum benefits available for the calendar year 1978. Although Blane Brock was hospitalized during May and June, 1978, and later in that year, no further claims were made upon Protective pursuant to the maximum benefits of the contract.
On January 31, 1980, Coliseum filed a petition on open account claiming that Henry J. Brock was indebted to them for Twenty-One Thousand Ninety-Four Dollars and Sixteen Cents ($21,094.16). Henry J. Brock thereafter filed a third-party demand against Protective, claiming that pursuant to LSA-R.S. 22:213.2, Protective was obligated to offer benefits for treatment of mental disorders under the same condition as benefits for the treatment of other illnesses. The third-party demand filed December *780 2, 1981, also contained a demand for penalties and attorney's fees.
Protective answered the third-party demand denying its liability for the benefits claimed and denying the applicability of LSA-R.S. 22:213.2 to the policy of insurance at issue which was originally issued four years prior to the enactment of that statute.
A motion for summary judgment was filed on behalf of Protective on March 31, 1982, argued on April 20, 1982, and denied. Trial in this matter was held on June 10, 1982.
Following trial, appellant filed a peremptory exception of prescription under the terms of the contract.
On February 18, 1983, judgment was rendered in favor of plaintiff, Coliseum, and against defendant, Henry Brock, on the main demand and in favor of the defendant and against the third-party defendant, Protective, on the third-party demand. Protective filed a motion for new trial which was denied. It is from the judgment against the third-party defendant Protective which is now before this court on appeal.
Appellant Protective assigns the following as error by the trial court:
(1) The trial judge erred in denying appellant's motion for summary judgment;
(2) The trial judge erred in overruling appellant's exception of prescription;
(3) The trial judge erred in denying appellant's motion for new trial.
The following issues are presented for our consideration:
(1) Whether the demand of the insured against the insurer had prescribed prior to filing of the third-party demand against the insurer;
(2) Whether LSA-R.S. 22:213.2 is applicable to a contract of insurance negotiated prior to its enactment; and, if so, whether the policy of insurance issued to the policyholder at the commencement of each annual term constituted a "new policy" within the terms of LSA-R.S. 22:213.2.
In order to facilitate our analysis of the issues, the court will address the second issue first in consideration of the effect our determination has on the prescription question.
Appellant argues that LSA-R.S. 22:213.2 is inapplicable to a contract of insurance first negotiated prior to its enactment and that the annual renewal does not constitute a "new policy" within the terms of the statute. The statute, added in 1975 to Title 22 of the Louisiana Revised Statutes of 1950, provides that:
"Every insurer authorized to issue policies of health and accident insurance in this state shall offer to all prospective group, blanket, and franchise policyholders at their option a provision in the insurer's health and accident insurance policies which shall state that benefits shall be payable for services rendered for the treatment of mental and/or nervous disorders, under the same circumstances, conditions, limitations, and exclusions as benefits are paid under those policies for all other diagnoses, illnesses, or accidents; ...."
(Emphasis added)
The statute also provides that it "shall be applicable only to those policies issued on or after July 1, 1976."[1] Appellant asserts that the policy was issued in 1971, and that the trial court's application of the statute to the contract is an improper retroactive application of a law, citing LSA-C.C.P. art. 8. We agree that as a general rule, "laws are deemed to be prospective in effect unless their language clearly indicates otherwise." Green v. Liberty Mutual Ins. Co., 352 So.2d 366 (La.App. 4th Cir.1977), writ denied 354 So.2d 210 (La.1978); Guillory v. *781 McClinton, 359 So.2d 223 (La.App. 1st Cir. 1978).
LSA-R.S. 22:213.2 does not provide for retroactive-effect; however the trial court found that by the express provisions of the policy, each new annual term constituted a new contract and under the law reformed the contract so as to include the provisions of the statute during the period appellee's son was hospitalized.
The contract herein states that:
"The initial term of this Policy shall commence at 12:01 A.M. (standard time at the Policyholder's principal address as shown on the application) on the effective date of this Policy and end on the day immediately preceding the first renewal date. On the first renewal date of this Policy and on the same date in each year thereafter (the date of subsequent renewal dates) this Policy, if then in force, shall be automatically extended for a term of one year commencing with the renewal date and ending with the day immediately preceding the next renewal date unless the Policyholder or the Company has given to the other written notice at least thirty days prior to the end of the then current term that it does not desire to extend this Policy for an additional term."
Thus, under the contract, there is no absolute right to insurance beyond one year. In such instances, each subsequent renewal is a separate contract, even though a new policy is not involved. Courville v. State Farm Mutual Automobile Insurance Company, et al., 393 So.2d 703 (La.1981); Fontenot v. State Farm Mutual Ins. Co., 119 So.2d 588 (La.App. 1st Cir.1960).
The statute herein was effective July, 1976. As the insurance contract renewed on January 1, 1977 was a new contract, the trial court correctly determined that at that time the statute became effective as to appellant, Protective.
Finally, reformation of a policy is appropriate where a violation of the statute occurs and no remedy is provided by the Insurance Code. Rudloff v. Louisiana Health Services & Indemnity Co., 385 So.2d 767 (La.1979); on rehearing (1980). See also Block v. Reliance Ins. Co., 433 So.2d 1040 (La.1983). In regard to the statute before us, the court in Burke v. Occidental Life Ins. Co. of California, 416 So.2d 177, 179 (La.App. 4th Cir.1982) noted:
"It is not unlawful for an insurance company to provide different coverage for physical and mental illnesses within the same policy, as long as the insured is given the opportunity to obtain similar coverage for mental and/or nervous disorders on the same terms as coverage for other diagnoses, illnesses, or accidents."
Where, as here, the insurance company has failed to offer similar mental disability coverage, the policyholder is presumed to have opted for equal coverage. Burke, supra; Rudloff, supra. As the trial court correctly found LSA-R.S. 22:213.2 applicable to appellant, coverage as stipulated to by the parties in the amount of Ten Thousand Seven Hundred Dollars and Fifty-Three Cents ($10,700.53) is owed absent the impediment of contractual prescription.
The policy clause related to prescription provides as follows:
"[n]o action at law or in equity shall be brought to recover under ... [the] Policy prior to the expiration of sixty days after written proof of loss has been furnished in accordance with the requirements of... [the] Policy. No such action shall be brought after the expiration of three years after the time when proof of loss is required by ... [the] Policy."
Proof of loss is required,
"within 90 days after the termination of the period for which the Company is liable, and in case of claim for any other loss, within 90 days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible, and in no event, except in the absence of *782 legal capacity of the employee, later than one year from the time proof is otherwise required."
Appellant argues that in May and June, 1978, appellee was advised that Protective had paid the maximum benefits available in that year for his dependent son. Subsequently no additional claims were filed with Protective on behalf of Blane Brock although he was hospitalized in May and June of 1978 as well as afterwards. Because no demand for additional medical benefits was made on Protective until December 2, 1981, appellant argues the claim prescribed under the express terms of the policy.
It is settled law in this state that provisions such as those quoted above are both valid and binding on the parties. Green v. People's Benev. Industrial Life Ins. Co. of Louisiana, 5 So.2d 916, 917 (La.App. 2d Cir.1941), reh. den. (1941); King v. Pan American Life Insurance Company, 324 So.2d 535 (La.App. 1st Cir. 1975), writ refused (1976); Hughes v. First National Life Insurance Co., 272 So.2d 57 (La.App. 4th Cir.1973).
Appellant is thus correct that the finding of the court that, "the statutory ten (10) year prescriptive period would apply and not the period set out in the policy which policy period is contrary to the statutory provision" is clearly contrary to the law of this state. However, the court also found, and appellee argues here, that the actions of the insurance company caused appellee-Brock's failure to file further proofs of loss and the delay in bringing legal action. We agree.
Generally the courts strictly apply contractual provisions relating to proofs of loss and prescription; however there are also circumstances in which the jurisprudence recognizes justifiable excuses. In Suire v. Combined Insurance Company of America, 290 So.2d 271 (La.1974), lack of knowledge of the existence of an insurance policy was considered a valid excuse. When the insurer induces delay by a reasonable belief that the claim will be settled, the courts have also relieved the insured from the prescriptive terms of the policy. Brocato v. Sun Underwriters Ins. Co. of N.Y., 53 So.2d 246, 219 La. 495, 29 A.L. R.2d 629 (1951). Notably, relief may be denied where the insured's actions were not due to reliance on the insurance company's assertions. Blum v. Cherokee Insurance Company, 336 So.2d 894 (La.App. 4th Cir.1976). In addition, the Louisiana courts recognize a limited exception to the running of statutory prescription where, in fact and for good cause, a plaintiff is unable to exercise his cause of action. Corsey v. State Dept. of Correction, 375 So.2d 1319 (La.1979). In that case, the court noted:
"The exception is founded on the ancient civilian doctrine of contra non valentem agere nulla currit praescriptio, predating and within the penumbras of modern civilian codes, and it has been recognized from Louisiana's earliest jurisprudence....

II.
As the cited comment notes, 12 Tul.L.Rev. at 253-54, this court in Reynolds v. Batson, 11 La.Ann. 729, 730-31 (1856), authoritatively lays down the three categories of situations in which our early jurisprudence held that the principle contra non valentem applied so as to prevent the running of liberative prescription: (1) Where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) Where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; and (3) Where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action.
Modern jurisprudence also recognizes a fourth type of situation where contra non valentem applies so that prescription does not run: Where the cause of action is not known or reasonably knowable by the plaintiff, even though *783 his ignorance is not induced by the defendant. (This principle will not except the plaintiff's claim from the running of prescription if his ignorance is attributable to his own willfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned." (Citations and footnotes omitted) At pages 1321-1322.
See also Grant v. Carroll, 424 So.2d 389 (La.App. 2d Cir.1982). In Cruze v. Life Ins. Co. of Virginia, 184 So. 735 (La.App. 1938), the doctrine was applied to similar facts involving the prescriptive period in a contract of insurance.
In the instant case, the appellant foreclosed action by appellee by unequivocally denying claims under the clear terms of the contract. The filing of further proofs of loss would have been fruitless since the contract only provided for Twenty-Five Hundred Dollars ($2,500) maximum major medical benefits for mental or nervous disorders which amount had been paid. By failing to offer the insured the proper benefits under the statute, however, the insurer effectively hid the insured's rights which prevented appellee from pursuing the claim further. As the court noted in Corsey where the cause of action is not known or reasonably knowable by plaintiff, delay in prosecution of the claim can be excused under the doctrine of contra non valentem, as long as such ignorance is not attributable to plaintiff's willfulness or neglect.
Insurance companies are regulated by statutory law. The statute herein requires the insurer to offer certain benefits to the insured; in effect to notify the insured of his additional rights. Corsey, supra. Thus, it was by the insurer's fault that appellee was led to rely on the invalid provision of coverage, causing him to fail to file further claims and to delay suit on the contract until such time as he became aware that he was entitled to additional benefits. There was no reason for appellee to have suspected that he was being deprived of his legal rights. Under the cases cited, appellee was justified in both not filing further proofs of loss and in delaying his action beyond the prescriptive period by a few months.
As it is our opinion that the doctrine of contra non valentem is applicable in this case, appellee is entitled to relief and his failure to abide by the contract time limitation is excused.
For the foregoing reasons, after a review of the law and the evidence, the trial court judgment in favor of third-party plaintiff, Henry J. Brock, is hereby affirmed. Appellant is to pay all costs of this appeal.
AFFIRMED.
NOTES
[1] LSA-R.S. 22:669 was added by Acts 1981, No. 411, effective January 1, 1982 and is the successor statute to LSA-R.S. 22:213.2.

LSA-R.S. 22:669(D) states that, "[a]ny policies, contracts or plans in effect on January 1, 1982 shall, on the anniversary date of such coverage, be covered in conformance with this section; however, all existing coverage shall be converted to conform to the provisions of this Section no later than January 1, 1983."